[Cite as *Miller v. Ohio State Hwy. Patrol*, 2020-Ohio-3231.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

FAYETTE COUNTY

| | | |
|---|---|---|
| JERRY MILLER, | : | |
| Appellant, | : | CASE NO. CA2019-08-017 |
| | : | O P I N I O N |
| - vs - | | 6/8/2020 |
| | : | |
| OHIO STATE HIGHWAY PATROL, et al., | : | |
| Appellees. | : | |

CIVIL APPEAL FROM FAYETTE COUNTY COURT OF COMMON PLEAS
Case No. CVH20190120

James R. Willis, 1144 Rockefeller Bldg., 614 W. Superior Avenue, Cleveland, Ohio 44113, for appellant

Ohio Attorney General, Dave Yost, Peter L. Jamison, Executive Agencies Section, 1970 West Broad Street, Suite 531, Columbus, Ohio 43223, for appellees.

**HENDRICKSON, P.J.**

{¶ 1} Jerry Miller appeals the decision of the Fayette County Common Pleas Court, which denied his petition requesting the return of his United States currency that was seized by the Ohio State Highway Patrol following a traffic stop. For the reasons that follow, this court affirms the common pleas court.

{¶ 2} Affidavits in the record indicate that shortly after midnight on April 6, 2019,

Miller and a passenger were traveling southbound on I-71 in Fayette County. Michael Ross, an Ohio State Highway Patrol ("OSHP") trooper, was travelling northbound on I-71 when he observed Miller's vehicle, a dark-colored SUV, speeding 87 miles per hour in a 70 mile per hour zone. Trooper Ross turned around and proceeded to initiate a traffic stop.

{¶ 3} Upon approaching the vehicle, Trooper Ross observed furtive movements by Miller, who was driving, and Miller's passenger. Upon approaching Miller, Trooper Ross detected the strong odor of marijuana and noticed Miller acted "distant" and would not maintain eye contact, repeatedly looking towards the vehicle's center console. Trooper Ross asked Miller if there was marijuana in the vehicle because of the smell, which Miller denied. Trooper Ross then removed Miller from the vehicle. Subsequently, Miller admitted to the presence of a small amount of marijuana in the vehicle and said that it could be located in the front dash behind a screen. At this point, Trooper Ross also removed Miller's passenger from the car.

{¶ 4} Trooper Ross searched the vehicle and recovered a small amount of marijuana where Miller indicated he would find it. Subsequently, Trooper Ross discovered a large amount of United States currency located in the middle seats of the vehicle. The money was not "contained or packaged in any certain order. It was all thrown into bundles with rubber bands, some of it was opened, some of it was vacuum sealed, or in zip lock plastic bags." In addition to the money, Trooper Ross also found an electronic money counter and three cellular phones. Upon questioning, Miller claimed that the currency was his. When asked to estimate how much was there, Miller responded "about 270" (meaning $270,000).

{¶ 5} While searching the vehicle, Trooper Ross noticed two vehicles that slowed dramatically as they approached the traffic stop. Trooper Ross found this unusual and believed these might be "tail vehicles" so he requested that backup rush to the scene.

{¶ 6} Trooper Ross, based on his training and experience with drug interdiction, the manner in which the currency was packaged, the electronic money counter, and the discovery of an active out-of-state warrant for Miller for drug possession, believed that the currency was related to a criminal enterprise. Trooper Ross decided to seize the vehicle and its contents and had the vehicle towed to OSHP's Wilmington post, where Trooper Ross met with his commander and federal agents of the Department of Treasury, Drug Enforcement Administration ("DEA").

{¶ 7} At the post, the decision was made that the DEA would seize the currency in conjunction with a criminal investigation into Miller and for a potential federal civil forfeiture case. Trooper Ross prepared a document listing the items he seized, including the currency. This document indicated that the seized items were transferred to Task Force Officer ("TFO") Joseph Luebbers, a task force member of the DEA. TFO Luebbers signed the document indicating receipt of the seized items.

{¶ 8} TFO Luebbers spoke with Miller and told him that the currency, two of the three cell phones, and the electronic money counting machine were being seized as evidence and that a federal forfeiture action would likely be filed. Another DEA agent provided Miller with a receipt on Department of Justice and DEA letterhead indicating that the DEA was in possession of the currency, phones, and money counter.

{¶ 9} Trooper Ross ticketed Miller for speeding and issued him a minor misdemeanor marijuana possession ticket. Miller and his passenger were then released.

{¶ 10} The currency remained at the Wilmington post until April 8, 2019, when it was retrieved by two DEA agents. On April 11, 2019, DEA agents took the currency to a money counting facility, where it was determined that the total amount seized was $284,942. The funds were subsequently deposited into a federal bank account.

{¶ 11} On April 11, 2019, Miller petitioned the Fayette County Common Pleas Court

- 3 -

for the return of his money. The petition named OSHP, Trooper Ross, and Trooper Ross' commander as defendants.[1] OSHP subsequently moved to dismiss the petition, arguing that the common pleas court lacked jurisdiction based on the federal adoption of the seized currency.

{¶ 12} In support of the motion, OSHP filed the affidavits of Trooper Ross, TFO Luebbers, Trooper Ross' commander, and the DEA's forfeiture counsel. These affidavits incorporated various documents, including records documenting the transfer of the currency from Trooper Ross to TFO Luebbers, a copy of a receipt from the DEA to Miller, and copies of the Department of Justice notices that were sent to Miller and others in May 2019, advising them of the federal seizure of currency and their right to file a claim to challenge the seizure.

{¶ 13} Miller opposed the motion but did not submit any competing evidentiary materials.[2] The common pleas court granted the motion, reasoning that it lacked subject-matter jurisdiction to order the release of the currency due to the DEA seizure and that subject-matter jurisdiction was now in federal court. Miller appeals, raising five assignments of error.

{¶ 14} Assignment of Error No. I:

{¶ 15} GIVEN THE INSUPERABLE TENET THAT POSSESSION OBTAINED THROUGH AN INVALID SEIZURE NEITHER STRIPS THE FIRST COURT OF ITS JURISDICTION NOR VESTS IT IN THE SECOND COURT, IT FOLLOWS THE COURT ERRED WHEN IT RULED IT LACKED JURISDICTION.

---

1. For ease of reading, this court will refer to the defendants collectively as "OSHP."

2. Miller did submit a blank form titled "Request for Adoption of State and Local Seizure," which appears to be an internal Department of Justice form required to be completed by both the local/state agency and the federal agency where the federal agency is adopting a state seizure. Miller argued that OSHP had not demonstrated that the law enforcement agencies properly completed this form.

{¶ 16} OSHP filed its motion to dismiss pursuant to Civ.R. 12(B)(1) and 12(B)(6), asserting that the common pleas court lacked jurisdiction or that Miller had not stated a claim for which relief could be granted. The common pleas court granted the motion based upon Civ.R. 12(B)(1), finding that it lacked jurisdiction.

{¶ 17} A trial court must grant a Civ.R. 12(B)(1) motion to dismiss for lack of subject-matter jurisdiction if the complaint fails to raise a cause of action cognizable by the forum. *State ex rel. Bush v. Spurlock*, 42 Ohio St.3d 77, 80 (1989). In deciding a Civ.R. 12(B)(1) motion, the trial court can consider evidence outside the complaint. *Southgate Dev. Corp. v. Columbia Gas Transm. Corp.*, 48 Ohio St.2d 211 (1976), paragraph one of the syllabus. This court conducts a de novo review of a common pleas court's decision on a motion to dismiss for lack of subject-matter jurisdiction under Civ.R. 12(B)(1). *McKenzie v. Meijer, Inc.*, 12th Dist. Clermont No. CA2016-09-061, 2017-Ohio-1495, ¶ 10.

{¶ 18} In his first assignment of error, Miller argues that the common pleas court erred because exclusive jurisdiction over the seized currency vested in the Fayette County Common Pleas Court from the moment OSHP seized the currency. Miller contends that transfer of the seized assets to federal authorities was barred without a state judicial order. For this proposition, Miller cites *United States v. One 1979 Chevrolet C-20 Van*, 924 F.2d 120 (7th Cir.1991). *C-20 Van*, however, is an Illinois case involving an Illinois statute, which statute required court approval for a state agency to transfer seized property to a federal agency. *Id.* at 122.

{¶ 19} The civil forfeiture statutes of Ohio do not require a court order for a law enforcement agency to seek federal adoption. R.C. 2981.14(A) provides:

> Subject to division (B) of this section, nothing in this chapter precludes the head of a law enforcement agency that seizes property from seeking forfeiture under federal law. If the property is forfeitable under this chapter and federal forfeiture is not sought, the property is subject only to this chapter.

{¶ 20} In turn, R.C. 2981.14(B) provides that no state agency shall directly or indirectly transfer any seized property to a federal law enforcement agency unless the "the value of the seized property exceeds one hundred thousand dollars * * * or the property is being transferred or referred for federal criminal forfeiture proceedings." Here, the amount transferred to the DEA exceeded $100,000 and thus could be lawfully transferred pursuant to R.C. 2981.14.

{¶ 21} Nonetheless, Miller claims that Ohio law requires a judicial order before state-seized assets can be transferred to a federal agency. Miller asserts that R.C. 2933.26 and *State v. Jacobs*, 137 Ohio St. 363 (1940), read together, stand for this proposition. Miller does not explain his argument any further other than to say that the two authorities must be read together and that a law enforcement officer must have specific and articulable facts pointing to criminal behavior before the officer can make a lawful seizure.

{¶ 22} Chapter 2933 of the Revised Code addresses search warrants. R.C. 2933.26 provides: "[w]hen a warrant is executed by the seizure of property or things described therein, such property or things shall be kept by the judge, clerk, or magistrate to be used as evidence." In *Jacobs*, the Ohio Supreme Court held that evidence confiscated by a law enforcement officer without a warrant, for use in a criminal proceeding, is under the control and subject to the order of the court pursuant to certain General Code statutory provisions. *Jacobs* at 365.

{¶ 23} Neither R.C. 2933.26 nor *Jacobs* is relevant to this civil forfeiture action. The underlying law enforcement activity that resulted in the seizure in this case did not involve the execution of a search warrant and the currency was not seized for evidence in any state criminal proceedings against Miller. Moreover, neither R.C. 2933.26 nor *Jacobs*, whether read in conjunction or not, stand for the proposition that in rem jurisdiction vests exclusively

in Ohio courts upon a civil forfeiture seizure by a state law enforcement agency pursuant to R.C. 2981.03(A)(2). Nor do these authorities stand for the proposition that a court order must be sought before a state agency can seek federal adoption pursuant to R.C. 2981.14.

{¶ 24} Finally, Miller argues that the DEA was not on the scene of the initial seizure and thus could not possess specific and articulable facts justifying its seizure of the currency. However, federal law permits the DEA to accept property that "was lawfully seized by a State or local law enforcement agency * * *." 18 U.S.C. 981(b)(2)(C).

{¶ 25} This court understands that Miller contests the lawfulness of the seizure by OSHP. However, this is a matter that Miller can pursue in conjunction with his right to make a claim under 18 U.S.C. 983(a)(2). *Accord United States v. $677,660.00 in United States Currency*, N.D. Ohio No. 5:11 CV 770, 2012 U.S. Dist. LEXIS 12948 (Feb. 2, 2012) (reviewing challenges to the lawfulness of a seizure of currency by the Twinsburg, Ohio police department, who requested that the DEA adopt the case and wherein the DEA initiated administrative forfeiture proceedings). This court overrules Miller's first assignment of error.

{¶ 26} Assignment of Error No. II:

{¶ 27} THE TRIAL COURT ERRED, OR ABUSED ITS DISCRETION, WHEN IT SUMMARILY, INDEED WITHOUT MAKING ANY FINDINGS WHATSOEVER OF FACT, DISMISSED THE APPELLANT'S ACTION THAT WAS SEASONABLY LODGED HEREIN (AS AN ORIGINAL ACTION) UNDER FAVOR OF R.C. OF OHIO § 2981.03(A)(4).

{¶ 28} Miller next argues the court abused its discretion in dismissing his petition because of a lack of proof that the DEA had acquired "jurisdiction" over the seized currency. Miller cites two cases involving civil forfeiture from the Eight District Court of Appeals. *Harris v. Mayfield Hts.*, 8th Dist. Cuyahoga No. 95601, 2011-Ohio-1943 and *Long v. State*, 8th Dist. Cuyahoga No. 97044, 2012-Ohio-366.

{¶ 29} In *Harris*, a city police department seized over $15,000 from the petitioner during a traffic stop. *Id.* at ¶ 6-8. A police sergeant contacted a DEA agent, who indicated that he would "be coming in on Tuesday, May 25, 2010 to pick up the U.S. currency that was seized." *Id.* at ¶ 9. The next day, the police department completed a "Request for Adoption of State or Local Seizure form." *Id.* at ¶ 11.

{¶ 30} Subsequently, the petitioner filed a complaint in replevin against the police department, and a motion for the immediate return of the seized currency. *Id.* at ¶ 2. The department moved to dismiss, arguing that federal agents had taken possession of the currency and therefore the common pleas court lacked jurisdiction to hear the case. *Id.* at ¶ 3. After briefing, the common pleas court agreed with the police department and dismissed the case. *Id.* at ¶ 4.

{¶ 31} The appeals court reversed, finding that the record lacked evidence that the federal government had ever taken possession of the funds or had approved seizing the funds. *Id.* at ¶ 11, 16. The court noted that the evidence only established that the police department had seized the money and, two days later, completed a form requesting a federal adoption of the seizure. *Id.* at ¶ 11.

{¶ 32} In *Long*, police officers and DEA agents executed a search warrant, recovering an undetermined amount of currency belonging to the petitioner. 2012-Ohio-366 at ¶ 2. The petitioner moved the common pleas court for the return of the seized property. *Id.* at ¶ 3. At a hearing, the state argued that the property had been seized by federal authorities and therefore the court lacked jurisdiction to entertain the petition. *Id.* at ¶ 4. The court dismissed the petition for lack of jurisdiction. *Id.*

{¶ 33} In reversing, the court of appeals concluded that the record lacked evidence establishing whether either the state or federal agencies "maintained jurisdiction" over the seized property. *Id.* at ¶ 8. The court noted that the only documents in the record were

DEA receipts listing the seized items, including an "undetermined" amount of currency. The receipts failed to establish whether the state or federal agency had maintained the property subsequent to its initial seizure. *Id.* The court found that it could not determine which agency seized the property, whether the seized property had been adopted by the federal authorities, or how the adoption was accomplished. *Id.* at ¶ 9.

{¶ 34} This case does not suffer from a similar lack of proof as in *Harris* or *Long.* OSHP submitted evidentiary materials, including multiple affidavits supported by exhibits, which indicated that Trooper Ross seized the currency and other items on behalf of OSHP on April 6, 2019. Later that morning, the DEA and OSHP decided that the DEA would adopt the seized currency. Accordingly, Trooper Ross prepared a document ("Property Control document") transferring the property to the DEA via TFO Luebbers. The Property Control document indicated that the seized assets had been collected by Trooper Ross on April 6, 2019, at approximately 12:21 a.m., and were transferred to TFO Luebbers at 4:07 a.m. on the same date. The currency was removed from the vehicle and loaded into DEA evidence bags.

{¶ 35} TFO Luebbers' affidavit established that he was assigned to the DEA and was empowered to conduct federal investigations and to assist the DEA in connection with federal civil forfeiture laws. TFO Luebbers averred that he decided to seize Miller's currency on behalf of the DEA as part of a criminal investigation and for potential civil forfeiture. TFO Luebbers signed the Property Control document in order to take custody of the currency on behalf of the DEA.

{¶ 36} OSHP Commander Mark A. Gooding's affidavit stated that because of the timing of the seizure (it was a weekend), the currency was held for the DEA at OSHP's Wilmington post until the morning of April 8, 2019, when the currency was retrieved by two DEA Agents. On April 11, 2019, the DEA took the currency to a counting facility in Louisville,

Kentucky. The currency was eventually deposited into a bank account operated by the U.S. Marshals Service.

{¶ 37} Accordingly, there was evidence submitted to the common pleas court that established that OSHP made the initial seizure, that OSHP and the DEA decided that the DEA would adopt the seizure, and that the "transfer" or "turn over" for purposes of federal forfeiture law occurred on April 6, 2019. Miller filed his petition five days later. In opposing OSHP's motion to dismiss, Miller submitted no evidence that would challenge any of the evidence submitted by OSHP demonstrating a valid transfer.

{¶ 38} Miller also argues that the court ignored that OSHP failed to prove that it and the DEA completed the "Request for Adoption of State and Local Seizure," a blank copy of which he attached to his memorandum in opposition. Miller points to a section of the "Asset Forfeiture Policy Manual," which was not made a part of the record but is apparently the policy manual of the Department of Justice concerning the Federal Asset Forfeiture Program. The specific section cited by Miller indicates that the federal authorities must report seizures from state agencies on this specific form, that no seizure should take place while the property is subject to the jurisdiction of a state court, and that when requesting adoption, the state agency must certify to the federal agency that the adoption complies with state law.

{¶ 39} Miller cites no state law applicable to civil forfeitures that would require OSHP to complete this form before it could transfer seized assets to a federal agency. As discussed above, R.C. 2981.14 gives the agency statutory authority to seek forfeiture under federal law. Under 18 U.S.C. 981(b)(2)(C), a federal agency may seize property subject to forfeiture without a warrant if "the property was lawfully seized by a State or local law enforcement agency and *transferred* to a Federal agency." (Emphasis added.) "Transferred" is undefined and the statute does not indicate what steps are necessary to

complete a transfer between the state and federal agency. The federal notice provisions describe the transfer as when the property is "turned over":

> In a case in which the property is seized by a State or local law enforcement agency *and turned over* to a Federal law enforcement agency for the purpose of forfeiture under Federal law, notice shall be sent not more than 90 days after the date of seizure by the State or local law enforcement agency.

(Emphasis added.) 18 U.S.C. 983(a)(1)(A)(iv).

{¶ 40} Under this court's interpretation of the relevant state and federal laws, a state transfer of seized assets to a federal agency under 18 U.S.C. 981(b)(2)(C) is proper where no state forfeiture proceedings or petitions filed pursuant to R.C. 2981.03(A)(4) have commenced and, with the agreement of the state agency, the federal agency takes some action to accept control or custody of assets lawfully seized by the state agency. As discussed in response to the first assignment of error, the record contains uncontroverted evidence that OSHP and the DEA agreed that the DEA would adopt the seized currency, which transfer TFO Luebbers completed when he signed a receipt for the seized currency and assumed constructive possession. Physical possession occurred two days later. Several days later, Miller filed his petition in Fayette County, which petition was served on OSHP several days later still.

{¶ 41} Finally, Miller again argues that his petition for the return of property was an action in rem, which vested the Fayette County Common Pleas Court with exclusive jurisdiction over the seized currency. However, Miller's petition commenced after OSHP completed the transfer to the DEA. Such transfer deprived the state court of asserting in rem jurisdiction over assets under the control and custody of the federal government. This court overrules Miller's second assignment of error.

{¶ 42} Assignment of Error No. 3:

{¶ 43} THE COURT, GIVEN THE FACT THAT THE FOURTH AMENDMENT

PROHIBITS ILLEGAL SEARCHES AND SEIZURES, AND GIVEN THE FIFTH AMENDMENT BARS, IN THE WAKE OF ITS "TAKING CLAUSE," THE CONFISCATION WITHOUT DUE PROCESS OF LAW, IT FOLLOWS THAT IN THE ABSENCE HERE OF ANY FINDINGS THE COURT ERRED IN RULING DESPITE THE LACK OF ANY PROOF IT LACKED JURISDICTION.

{¶ 44} In his third assignment of error, Miller presents various arguments challenging the lawfulness of the OSHP stop and seizure. In doing so, Miller describes the hypothetical evidence he would have submitted at an evidentiary hearing challenging the legality of the stop and seizure, e.g., that he lacked any prior convictions, that the vehicle was his wife's rental vehicle, and that his wife would claim ownership of the marijuana recovered.

{¶ 45} This court's review is limited to the record on appeal, which consists of "[t]he original papers and exhibits thereto filed in the trial court, the transcript of proceedings, if any, including exhibits, and a certified copy of the docket and journal entries prepared by the clerk of the trial court * * *." App.R. 9(A)(1). This court cannot consider argument based on evidence that was not presented to the trial court, much less hypothetical evidence. As stated in response to the first assignment of error, Miller has a remedy through federal court to challenge the lawfulness of the seizure of the currency.

{¶ 46} Miller also argues that the seizure was unlawful because the state forfeiture statutes require a seizure for civil forfeiture proceedings to be tied to the commission of a felony offense. Thus, his charge for misdemeanor drug possession would not justify the seizure that occurred in this case. However, the forfeiture statutes provides that "[a] law enforcement officer may seize property that the officer has probable cause to believe is property subject to forfeiture." R.C. 2981.03(A)(2). Property subject to forfeiture includes "[p]roceeds derived from or acquired through the commission of an offense." R.C. 2981.02(A)(1)(b). The definition of "offense" includes "any act or omission that could be

charged as a criminal offense * * *." R.C. 2981.01(B)(10).

{¶ 47} After seizure, the prosecutor may file a civil forfeiture action:

> against any person who is alleged to have received, retained, possessed, or disposed of proceeds, in an amount exceeding fifteen thousand dollars, knowing or having reasonable cause to believe that the proceeds were allegedly derived from the commission of an offense subject to forfeiture proceedings in violation of section 2927.21 of the Revised Code.

R.C. 2981.05(D)(1). R.C. 2927.21 lists all the offenses subject to forfeiture proceedings. Among those offenses is drug trafficking. R.C. 2927.21(h).

{¶ 48} OSHP submitted some evidence that could potentially support a finding of probable cause for Trooper Ross to conclude that the currency found in Miller's vehicle was derived from or acquired through drug trafficking. This evidence included Trooper Ross's knowledge of drug interdiction law enforcement coupled with his observations at the stop, including furtive movements by Miller and Miller's passenger, Miller's behavior when spoken to, the presence of narcotics in the vehicle, the haphazard way the currency was bundled, the presence of an electronic money counter, three cellular phones, an out-of-state drug possession warrant, and suspicious slow-moving vehicle activity. Therefore, this court overrules Miller's third assignment of error.

{¶ 49} Assignment of Error IV:

{¶ 50} GIVEN THESE MONIES COULD NOT HAVE BEEN PROPERLY SEIZED ON THE BASIS OF ANY AUTHORITY, OTHER THAN THAT PROVIDED THEM BY R.C. OF OHIO, §§ 2981.02 & 2981.03, GIVEN IN REM JURISDICTION IN THE STATE VESTED IN THE WAKE THEREOF, THE COURT ERRED WHEN IT FAILED TO RECOGNIZE THE SIGNIFICANCE OF THESE FACTS.

{¶ 51} In his fourth assignment of error, Miller reiterates some of the arguments concerning Trooper Ross' alleged lack of probable cause that he asserted in earlier

assignments of error. Miller cites three cases but does not present any argument as to the relevance of the holdings of these cases other than to generally indicate they support his argument.[3] It is not the role of this court to make Miller's arguments for him.

{¶ 52} App.R. 16(A)(7) obligates Miller to give "reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." App.R. 12(A)(2) obligates Miller to separately argue each assignment of error. This court overrules Miller's fourth assignment of error.

{¶ 53} Assignment of Error No. 5:

{¶ 54} WHEN PROPERTY, HERE (THE MONEY INVOLVED), WAS ORIGINALLY SEIZED IN THE WAKE OF A TRAFFIC STOP, WHICH PROVIDED THE ONLY POSSIBLE PROBABLE CAUSE THAT EVEN ARGUABLY EXISTED, IF IT DID THAT BEFORE THE SEIZURE UNDER THE LAW OF THIS STATE, JURISDICTION AUTOMATICALLY VESTED OVER ANY PROPERTY SEIZED. SO POSTURED, THE COURT ERRED WHEN IT DISMISSED THIS CASE.

{¶ 55} In his final assignment of error, Miller reiterates the argument presented in his first assignment of error, i.e., that in rem jurisdiction over the currency and other seized items vested exclusively in the Fayette County Common Pleas Court immediately upon the seizure by OSHP. Miller also repeats the arguments from his second assignment of error concerning OSHP's failure to prove that the federal adoption of the seizure complied with the rules contained in the Asset Forfeiture Policy Manual. This court overrules Miller's fifth assignment of error for the reasons set forth previously.

{¶ 56} Judgment affirmed.

S. POWELL and M. POWELL, JJ., concur.

---

3. *Mapp v. Ohio*, 367 U.S. 643, 81 S. Ct. 1684 (1961); *Beck v. Ohio*, 379 U.S. 89, 85 S. Ct. 223 (1964); *One 1958 Plymouth Sedan v. Pennsylvania*, 380 U.S. 693, 85 S. Ct. 1246 (1965).