[Cite as *State v. Grace*, 2023-Ohio-165.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio/City of Toledo　　　　　　　Court of Appeals No.　L-22-1061

　　　　Appellee　　　　　　　　　　　　　Trial Court No.　CRA-20-10610

v.

Nickolas Grace　　　　　　　　　　　　**DECISION AND JUDGMENT**

　　　　Appellant　　　　　　　　　　　　Decided:　January 20, 2023

* * * * *

Dale R. Emch, City of Toledo, Director of Law, and
Christopher D. Lawrence, Assistant Toledo City
Prosecuting Attorney, for appellee.

David Klucas, for appellant.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} Appellant, Nickolas Grace, appeals the judgment of the Toledo Municipal Court denying his Motion to Return Seized Property.　For the reasons that follow, we reverse.

## I. Facts and Procedural Background

{¶ 2} On December 13, 2020, appellant was pulled over for a traffic violation. A subsequent search of the vehicle uncovered marijuana, as well as $21,456.00 in cash and two iPhones. On that day, appellant was charged by criminal complaint in the Toledo Municipal Court with one count of trafficking in marihuana in violation of R.C. 2925.03(A) and (C)(3), a felony of the fifth degree.[1]

{¶ 3} On January 5, 2021, appellee, the State of Ohio/City of Toledo, entered a nolle prosequi and dismissed the charge. Three days later, appellant filed a motion to return the seized cash, cell phones, and a set of keys. On February 2, 2021, the municipal court judge withdrew the motion, noting on the docket that the money was seized by the federal government.

{¶ 4} Thereafter, on June 23, 2021, appellant filed the subject Motion to Return Seized Property pursuant to R.C. 2981.11, seeking to recover the $21,456.00 in cash and two iPhones. Appellee opposed appellant's motion, arguing that the money was seized by a Toledo Police Sergeant working in his capacity as part of a federal task force. Thus, appellee argued that it was the federal government that seized appellant's property, and he should seek redress there.

{¶ 5} The trial court held a hearing on appellant's motion on December 9, 2021. The day before the hearing, appellant filed a supplemental motion, in which he argued

---

[1] Appellant was also charged with several misdemeanors in a separate case that is not before us on appeal.

2.

that appellee wrongfully transferred the cash to the federal government in contravention of R.C. 2981.14(B), which provides,

> (B) A law enforcement agency or prosecuting authority shall not directly or indirectly transfer or refer any property seized by the agency or authority to any federal law enforcement authority or other federal agency for purposes of forfeiture under federal law unless the value of the seized property exceeds one hundred thousand dollars, excluding the potential value of the sale of contraband, or the property is transferred or referred for federal criminal forfeiture proceedings.

{¶ 6} At the hearing, Toledo Police Sergeant Kevin Korsog testified. Korsog explained that in addition to running the Forfeiture Unit for the Toledo Police Department, he is a sworn officer with the Homeland Security Bulk Cash Smuggling Task Force in northwest Ohio. Korsog testified that in the early morning hours of December 13, 2020, he was called to the Toledo Police Safety Building because appellant had been arrested and was found in possession of $21,456.00 in cash. When Korsog arrived, he spoke with appellant, and advised him that he was going to seize the money "under state and/or federal investigation." Because appellant was extremely agitated at the time, Korsog did not have him sign a property receipt. The property receipt provided to appellant was from the Toledo Police Department.

3.

{¶ 7} Korsog counted the money, and verified that it was $21,456.00. Korsog then contacted Homeland Security Special Agent Andrew Watson, and informed him that the money had been seized and that appellant was being charged with a state drug felony. Korsog and Watson discussed the best course of action, and concluded that the money should be transferred to Border Patrol, which handles bulk cash smuggling and investigations. Later that morning, the money was transferred to Watson, and a custody receipt was prepared. Korsog has not had any further interaction with any federal agencies regarding appellant or the money. Korsog testified that at the request of the federal agencies, appellee elected to nolle prosequi and dismiss without prejudice the state felony drug charge.

{¶ 8} Following the hearing, the trial court entered its judgment denying appellant's Motion to Return Seized Property. The trial court concluded that it found "no impropriety with the transfer of the $21,456.00 to the federal government. But even if it did, ordering the City of Toledo to pay the Defendant $21,456.00 would create a potential windfall for the Defendant, as the seized money could still yet be returned to him by the federal government if forfeiture proceedings are not initiated, or if he successfully challenges the forfeiture in court." The court determined that appellant's remedy "lies with the federal court."

## II. Assignment of Error

{¶ 9} Appellant has timely appealed the judgment of the Toledo Municipal Court, and now asserts one assignment of error for our review:

> 1. The trial court committed reversible error by denying Mr. Grace's Motion to Return Seized Property.

## III. Analysis

{¶ 10} This case presents a unique fact pattern. On appeal, much of the discussion centers on the propriety of appellee's transfer of the money to the federal government. However, this issue is only tangentially related to the central question of whether appellant is entitled to have the money returned.

{¶ 11} We will start with the basic premise that appellant owns the money. In the absence of a legal justification and due process, the government cannot simply take appellant's money.

{¶ 12} Here, it is undisputed that the money was lawfully seized as evidence of a crime either during a search incident to arrest or an inventory search. The parties, however, do dispute whether the money was seized by state or federal authorities. On that question, when the trial court found no impropriety with the transfer of money to the federal government, it implicitly found that the money was initially seized by appellee because if the federal government had seized the money, then there would be no need for a transfer. The evidence overwhelmingly supports this conclusion. The money was

5.

initially seized by Toledo Police officers following a high-speed car chase. No federal officers were involved in the chase or arrest. Korsog, a Toledo Police Sergeant, informed appellant that the money was being seized because it was under "state and/or federal investigation." Korsog provided appellant with a receipt for the money from the Toledo Police Department. Korsog then consulted with another member of the federal task force, and a decision was made to transfer the money to Border Patrol for potential investigation into bulk cash smuggling. At that point, the money had already been seized and was in the possession of the Toledo Police Department. Therefore, we hold that appellee, not the federal government, initially seized the money as evidence of a crime.

{¶ 13} It is also undisputed that the money is property that could be subject to forfeiture under R.C. 2981.02(A)(1) as either proceeds or instrumentalities of a crime.

{¶ 14} Appellee has provisional title to money subject to forfeiture, upon commission of an offense giving rise to forfeiture. R.C. 2981.03(A)(1); *State v. Bolton*, 2017-Ohio-7263, 97 N.E.3d 37, ¶ 11. "This provisional title is subject to claims of third parties and a final forfeiture adjudication." *Bolton* at ¶ 11; R.C. 2981.03(A)(1) ("The state or political subdivision acquires provisional title to property subject to forfeiture under this chapter upon a person's commission of an offense giving rise to forfeiture, subject to third party claims and a final adjudication under section 2981.04 or 2981.05 of the Revised Code.). "Provisional title authorizes the state or political subdivision to seize and hold the property, and to act to protect the property, under this section before any

6.

proceeding under this chapter." R.C. 2981.03(A)(1). "Title to the property vests with the state or political subdivision when the trier of fact renders a final forfeiture verdict or order under section 2981.04 or 2981.05 of the Revised Code, but that title is subject to third party claims adjudicated under those sections." *Id.*

{¶ 15} "Any property that has been lost, abandoned, stolen, seized pursuant to a search warrant, or otherwise lawfully seized or forfeited and that is in the custody of a law enforcement agency shall be kept safely by the agency, pending the time it no longer is needed as evidence or for another lawful purpose, and shall be disposed of pursuant to sections 2981.12 and 2981.13 of the Revised Code." R.C. 2981.11(A)(1). Breaking this statute down, R.C. 2981.11(A)(1) describes (1) the property to which it applies, (2) how long the property should be kept, and (3) what should be done with the property after that time.

{¶ 16} Under the first consideration, R.C. 2981.11(A)(1) clearly applies to the money at issue because the money is property that has been "otherwise lawfully seized."

{¶ 17} Under the second consideration, appellee must safely keep the money "pending the time it is no longer needed as evidence or for another lawful purpose." *Id.*

{¶ 18} Here, appellee did not demonstrate that the money was still needed as evidence or for another lawful purpose. First, it is undisputed that appellant has not been charged with a federal crime relating to the money, nor has he been subject to a federal forfeiture proceeding regarding the money. In addition, no state felony charges involving

7.

the money were pending against appellant.  On the issue of whether the money was still needed as evidence, the record contains Korsog's testimony that the money was transferred to the federal government for purposes of a bulk cash smuggling investigation.  However, Korsog testified that he had no involvement in that investigation, and no other testimony from any federal agents regarding that investigation was presented.  Furthermore, Korsog has not been contacted by the U.S. Attorney's Office to testify in front of a grand jury, to share what he learned on the case, or to even provide the chain of custody of the evidence.  Korsog testified that if there was going to be a prosecution, "one hundred percent" the U.S. Attorney's Office would have contacted him about the chain of custody."  As to the state felony charge, Korsog testified that the charge was dismissed without prejudice, and there was nothing preventing appellee from indicting appellant on felony drug trafficking within the six-year statute of limitations. Korsog testified that the money would still be evidence as part of any potential future indictment.  However, as identified by appellant, appellee gave away its best piece of evidence in a trafficking case when it transferred the money to the federal government, making the potential of a future state prosecution illusory at best.  Therefore, we hold that appellee has not demonstrated a right under R.C. 2981.11(A)(1) to continue to hold the money as evidence or for another lawful purpose.

{¶ 19} For the third part of R.C. 2981.11(A)(1), because the money is no longer needed by appellee, the property must be disposed of pursuant to R.C. 2981.12 and

8.

2981.13. R.C. 2981.12 and 2981.13 apply to property that is unclaimed or forfeited. In this case, the money is neither.

{¶ 20} Obviously, the money has not been forfeited because the state has never initiated any forfeiture proceedings. Nor have any federal forfeiture proceedings been initiated. The parties extensively discussed R.C. 2981.14(B) in the trial court and on appeal, but R.C. 2981.14(B) simply does not apply in the present situation. R.C. 2981.14(B) prohibits the transfer of seized property to a federal agency "for purposes of forfeiture under federal law," unless the value exceeds $100,000 or it is being referred for federal criminal forfeiture proceedings. However, the money in this case was not transferred to Border Patrol "for purposes of forfeiture." Instead, it was transferred for potential investigation into criminal activity. R.C. 2981.14(B) contemplates federal forfeiture proceedings, and in that way the statute makes sense in the context of R.C. Chapter 2981 as a method to dispose of seized property through a formal legal process. Unless and until federal forfeiture proceedings are initiated, R.C. 2981.14(B) does not grant appellee authority to simply transfer evidence to a federal agency for potential investigation, and then absolve itself of any responsibility for the seized property.

{¶ 21} Also obviously, the money is not unclaimed because the money belongs to appellant and he seeks to have it returned. In those situations, R.C. 2981.11(C) provides, "A law enforcement agency with custody of property to be disposed of under section 2981.12 or 2981.13 of the Revised Code shall make a reasonable effort to locate persons

9.

entitled to possession of the property, to notify them of when and where it may be claimed, and to return the property to them at the earliest possible time." "Thus, there is an affirmative duty imposed on the law enforcement agency to ensure that the seized property is returned to the lawful owner without unnecessary delay." *State v. Freeman*, 8th Dist. Cuyahoga No. 111209, 2022-Ohio-2364, ¶ 3. Therefore, because the money has not been forfeited, and because it is no longer needed by appellee, the money must be returned to appellant "at the earliest possible time."

{¶ 22} Finally, appellee argues that it cannot return the money because it is in the hands of the federal government, and thus appellant's remedy is in the federal courts. In reaching the same conclusion, the trial court cited two cases, both of which we find distinguishable.

{¶ 23} In *Miller v. Ohio State Hwy. Patrol*, 12th Dist. Fayette No. CA2019-08-017, 2020-Ohio-3231, ¶ 25, the Twelfth District affirmed the decision of the trial court that it lacked jurisdiction to release the seized currency because subject-matter jurisdiction was in the federal court. In that case, approximately $270,000 in cash was seized from Miller during a traffic stop. The funds were transferred to the Drug Enforcement Administration ("DEA") in conjunction with a criminal investigation and a potential federal civil forfeiture case. *Id.* at ¶ 7. The Department of Justice then sent notices to Miller, advising him of the federal seizure of currency and his right to file a claim to challenge the seizure. *Id.* at ¶ 12.

10.

**{¶ 24}** Similarly, in *Cleveland v. Primm*, 8th Dist. Cuyahoga No. 104963, 2017-Ohio-7242, the Eighth District recognized that Primm's remedy was in federal court. In that case, approximately $100,000 was seized from Primm during a traffic stop. *Id.* at ¶ 1. The funds were immediately given to the federal government for adoptive forfeiture under federal law. *Id.* at ¶ 4. Forfeiture proceedings were undertaken in federal court, and the cash was ordered forfeited to the federal government. *Id.* at ¶ 12.

**{¶ 25}** In both *Miller* and *Primm*, the funds were transferred to the federal government, and forfeiture proceedings were initiated. Here, in contrast, there are no federal forfeiture proceedings in which appellant can attempt to protect his rights.

**{¶ 26}** The bottom line is that appellee seized the money, and gained provisional title to it. Because appellee's ownership of the money is only provisional, it is required to safely keep it. If appellee fails to safely keep the money by, for example, transferring it to a federal agency, then appellee bears the risk of loss when the rightful owner comes to retrieve it. Appellant—who has not been convicted of a crime, and against whom no forfeiture proceedings have been initiated—should not have to participate in a game of three-card monte to recover his property once it is no longer needed by appellee.

**{¶ 27}** Therefore, because the $21,456.00 is no longer needed as evidence or for another lawful purpose, we hold that the trial court erred in denying appellant's Motion to Return Seized Property, and we order appellee to return the $21,456.00 "at the earliest possible time."

11.

**{¶ 28}** Accordingly, appellant's assignment of error is well-taken.

## IV. Conclusion

**{¶ 29}** For the foregoing reasons, we find that substantial justice has not been done the party complaining, and the judgment of the Toledo Municipal Court is reversed. The matter is remanded to the trial court for further proceedings consistent with this decision. Appellee is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment reversed
and remanded.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

_____
JUDGE

Thomas J. Osowik, J.

_____

Gene A. Zmuda, J.
CONCUR.

JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.