[Cite as *Camargo v. Toledo*, 2024-Ohio-488.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

Darlene Camargo                                    Court of Appeals No.  L-23-1056

      Appellant                                    Trial Court No.  CI0202102744

v.

City of Toledo                                     **DECISION AND JUDGMENT**

      Appellee                                     Decided:  February 9, 2024

\* \* \* \* \*

Jerome Phillips, for appellant.

Dale R. Emch, City of Toledo Director of Law, Jeffrey B.
Charles, and Edward T. Mohler, for appellee.

\* \* \* \* \*

**SULEK, J.**

{¶ 1} Appellant, Darlene Camargo, appeals the February 13, 2023 judgment of the Lucas County Court of Common Pleas granting summary judgment in favor of appellee, city of Toledo, in her action for damages relating to the seizure and detention of her 2017 Ford Explorer.  Because no issues of fact as to the city's immunity remain, the judgment is affirmed.

## I. Facts and Procedural History

{¶ 2} The key facts in this case are undisputed. On April 21, 2021, Camargo's 2017 Ford Explorer was seized by Toledo Police. On that day, Toledo Police were surveilling the Camargo residence in south Toledo based upon information that Camargo's son, Martin Camargo, Jr. (Camargo Jr.), was involved in the large-scale distribution of Fentanyl. Police believed that all the Camargos at the south Toledo address were involved in illegal drug activity. Police observed Camargo's husband, Martin Camargo, Sr. (Camargo Sr.), and Camargo, Jr., standing together in the driveway when Camargo Jr. took two bags from his Dodge Avenger, put them in a gray bag, and then put the bag in his Chevrolet pick-up truck. Camargo Sr. and Jr. then left the Camargo residence in separate vehicles. Camargo Sr. was driving Camargo's vehicle and Camargo Jr. was in the pick-up truck. They proceeded in tandem northeast on the Anthony Wayne Trail toward downtown Toledo with Camargo Sr. following behind Camargo Jr. Camargo Sr. was stopped for what police described as a "blocking" maneuver or attempt to impede police access to Camargo Jr.'s vehicle. Following the traffic stop and an exterior search where a police K9 alerted to the cargo area, Camargo Sr. was arrested and the vehicle impounded. Following a police chase, Camargo Jr. was also arrested and his vehicle was impounded. Police recovered the bag he threw from his vehicle containing two kilos of Fentanyl. Two additional kilos of Fentanyl and a total of $710,000 were seized following a search of the Camargo residence; approximately

2.

$30,000 to $40,000 was found in Camargo Sr.'s bedroom. Subsequent April 2021 searches of Camargo's vehicle uncovered no additional evidence.

{¶ 3} On July 15, 2021, the Lucas County Grand Jury returned a no bill as to Camargo Sr. During this time a federal criminal case was pending against Camargo Jr. Thereafter, Camargo made multiple requests for the release of her vehicle, some with the aid of counsel.

{¶ 4} On August 10, 2021, Camargo commenced an action against the city demanding the return of her vehicle and requesting monetary damages for wrongful detention of the vehicle. The vehicle was released by police on October 15, 2021, Camargo then filed an amended complaint alleging damages to the vehicle in an unspecified amount and raising constitutional, due process claims. The city raised the affirmative defenses of immunity under R.C. Chapter 2744, and qualified immunity.

{¶ 5} The city's April 11, 2022 motion for summary judgment argued that Camargo failed to raise a cognizable tort claim. The city asserted that the vehicle was lawfully detained pursuant to an ongoing, major drug smuggling investigation at the state and federal level. The city argued that Camargo failed to avail herself of statutory return remedies including a replevin action, R.C. 2737.03, and remedies under R.C. 2981.03(D), relating to the return of property in police custody. Finally, the city asserted that it was immune from liability under R.C. 2744.02(A).

3.

{¶ 6} Camargo responded that issues of fact remained as to the city's unlawful, and constitutionally violative detention of her vehicle following the July 15, 2021 no bill from the Grand Jury and the admission that as to the vehicle, no further investigative action was taken. She further argued that as a public entity, the city could not rely on a qualified immunity defense as it shields only the individual from liability in his or her individual capacity.

{¶ 7} The parties memoranda were supported by affidavits and depositions of Toledo Police officers involved in either the surveillance and arrest of Camargo Sr. and Jr. or the search, seizure, and detention of the vehicle. The affidavits of Camargo and Camargo Sr. and vehicle repair estimates were also submitted.

{¶ 8} The trial court's February 13, 2023 judgment entry granted the city's motion. The trial court found that the city's detention of Camargo's vehicle beyond the July 15, 2021 no bill was in performance of a governmental function because it could have reasonably been assumed that the detention was supported by the ongoing investigation and prosecution of Camargo Jr. In support, the trial court distinguished *Ledbetter v. Dayton*, 2d Dist. Montgomery No. CA-12249, 1991 WL 38871 (Mar. 22, 1991), where the court found that the continued detention of a seized vehicle was no longer a governmental function and the city was not entitled to immunity. The trial court noted that unlike the present case, in *Ledbetter* the vehicle was held in violation of a court order and that there was no ongoing, criminal investigation potentially involving the

4.

vehicle.  The court then concluded that the city was immune from liability under R.C. 2744.02(B), and that no exceptions to immunity applied.

{¶ 9} This appeal followed.

## II. Assignment of Error

Assignment of Error No. 1: The trial court erred in granting summary judgment in favor of Appellee as to the claims in Appellant's Complaint on the basis of statutory immunity as conflicting evidence in the record as to Appellee's good faith compliance with Ohio Rev. Code Ann. § 2981.11 creates a genuine issue of material fact.

## III. Analysis

{¶ 10} An appellate court reviews the grant or denial of a motion for summary judgment de novo, applying the same standard as the trial court.  *Bliss v. Johns Manville*, 172 Ohio St.3d 367, 2022-Ohio-4366, 244 N.E.3d 22, ¶ 12.  Under Civ.R. 56(C), a court shall grant summary judgment only where (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party.

{¶ 11} Camargo argues that the trial court erred in awarding summary judgment in the city's favor because issues of fact remain as to the city's good faith compliance with R.C. 2981.11 and, thus, the availability of immunity under R.C. 2744.02.  Camargo

5.

further asserts that the trial court erred in rejecting her claims based upon its reliance on *Ledbetter, supra,* in finding that because the vehicle was not held in contravention of a court order, the city was immune from liability. Camargo asserts that this interpretation renders the mandates under R.C. 2981.11 superfluous in that it requires that an aggrieved party commence a lawsuit before it can be determined that police detention of property ceased being a governmental function.

{¶ 12} The city simply argues that it was engaged in a governmental function when it seized the vehicle for a legitimate purpose, it was detained during an ongoing police investigation, and that the governmental function continued until the vehicle's return in October 2021. The city asserts that Camargo fails to delineate any R.C. 2744.02(B) exceptions to the city's immunity for seizing and detaining the vehicle.

{¶ 13} R.C. Chapter 2744 generally provides for immunity for political subdivisions and their employees. R.C. Chapter 2744 provides a three-tiered analysis for determining whether a political subdivision may be immune from liability. *Lambert v. Clancy*, 125 Ohio St.3d 231, 2010-Ohio-1483, 927 N.E.2d 585, ¶ 17. Specifically, R.C. 2744.02(A)(1) provides that "a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function."

6.

{¶ 14} R.C. 2744.02(B) establishes the following five exceptions to this immunity:

(1) Except as otherwise provided in this division, political subdivisions are liable for injury, death, or loss to person or property caused by the negligent operation of any motor vehicle by their employees when the employees are engaged within the scope of their employment and authority. The following are full defenses to that liability:

(a) A member of a municipal corporation police department or any other police agency was operating a motor vehicle while responding to an emergency call and the operation of the vehicle did not constitute willful or wanton misconduct;

(b) A member of a municipal corporation fire department or any other firefighting agency was operating a motor vehicle while engaged in duty at a fire, proceeding toward a place where a fire is in progress or is believed to be in progress, or answering any other emergency alarm and the operation of the vehicle did not constitute willful or wanton misconduct;

(c) A member of an emergency medical service owned or operated by a political subdivision was operating a motor vehicle while responding to or completing a call for emergency medical care or treatment, the member was holding a valid commercial driver's license issued pursuant to Chapter 4506. or a driver's license issued pursuant to Chapter 4507. of the

7.

Revised Code, the operation of the vehicle did not constitute willful or wanton misconduct, and the operation complies with the precautions of section 4511.03 of the Revised Code.

(2) Except as otherwise provided in sections 3314.07 and 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions.

(3) Except as otherwise provided in section 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property caused by their negligent failure to keep public roads in repair and other negligent failure to remove obstructions from public roads, except that it is a full defense to that liability, when a bridge within a municipal corporation is involved, that the municipal corporation does not have the responsibility for maintaining or inspecting the bridge.

(4) Except as otherwise provided in section 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property that is caused by the negligence of their employees and that occurs within or on the grounds of, and is due to physical defects within or on the grounds of, buildings that are used in connection with the performance of a

8.

governmental function, including, but not limited to, office buildings and courthouses, but not including jails, places of juvenile detention, workhouses, or any other detention facility, as defined in section 2921.01 of the Revised Code.

(5) In addition to the circumstances described in divisions (B)(1) to (4) of this section, a political subdivision is liable for injury, death, or loss to person or property when civil liability is expressly imposed upon the political subdivision by a section of the Revised Code, including, but not limited to, sections 2743.02 and 5591.37 of the Revised Code. Civil liability shall not be construed to exist under another section of the Revised Code merely because that section imposes a responsibility or mandatory duty upon a political subdivision, because that section provides for a criminal penalty, because of a general authorization in that section that a political subdivision may sue and be sued, or because that section uses the term "shall" in a provision pertaining to a political subdivision.

{¶ 15} If any of these exceptions to immunity applies, then R.C. 2744.03 provides additional liability defenses.

{¶ 16} It is undisputed that the city is a political subdivision under R.C. 2744.02(A). *See* R.C. 2744.01(F) (defining political subdivision to include, e.g., municipal corporations). Further, "governmental functions" include, among other things,

9.

"[t]he provision or nonprovision of police * * * services or protection." R.C. 2744.01(C)(2)(a). Relevantly, "police power to impound a vehicle constitutes a governmental function." *Emery v. City of Ashland Police Department*, 5th Dist. Ashland No. 18-COA-029, 2019-Ohio-1206, ¶ 33, citing *Pavlik v. Cleveland*, 8th Dist. Cuyahoga No. 92176, 2009-Ohio-3073, ¶ 18. With immunity presumptively established, whether any exceptions to immunity under R.C. 2744.02(B) must be determined.

{¶ 17} Camargo fails to argue the availability of any R.C. 2744.02(B) exceptions to immunity. Rather, Camargo maintains that the city is not entitled to immunity under R.C. 2744.02 because it acted in bad faith and violated R.C. 2981.11 when it failed to release the vehicle after the investigation of Camargo Sr. concluded or, at the latest, upon the no bill.

{¶ 18} R.C. 2981.11 provides: "Any property that has been * * * seized pursuant to a search warrant * * * and that is in the custody of a law enforcement agency shall be kept safely by the agency, pending the time it no longer is needed as evidence or for another lawful purpose." This statute imposes an affirmative duty on law enforcement to "'ensure that the seized property is returned to the lawful owner without unnecessary delay.'" *State v. Grace*, 2023-Ohio-165, 205 N.E.3d 1255, ¶ 21 (6th Dist.), quoting *State v. Freeman*, 8th Dist. Cuyahoga No. 111209, 2022-Ohio-2364, ¶ 3.

{¶ 19} Although not specifically relied upon by Camargo, R.C. 2744.02(B)(5) states "a political subdivision is liable for injury death, or loss to person or property when

10.

civil liability is expressly imposed upon the political subdivision by a section of the revised code." "Civil liability," however, "shall not be construed to exist under another section of the Revised Code merely because that section imposes a responsibility or mandatory duty upon a political subdivision." R.C. 2744.02(B)(5).

{¶ 20} Thus, even though R.C. 2981.11 imposed a mandatory duty on the city to return Camargo's vehicle at the earliest possible time, "'there is no language in the statute that imposes an express liability on the city for its failure to carry out that duty. Without direct or unmistakable terms imposing civil liability upon the city, R.C. 2744.02(B)(5) does not apply.'" *Pavlik* at ¶ 26, quoting *Swanson v. Cleveland*, 8th Dist. Cuyahoga No. 89490, 2008-Ohio-1254, ¶ 23 (interpreting the near-identical language of R.C. 2933.44(A)(1), repealed).

{¶ 21} Camargo asserts that the city's failure to release her vehicle until after she commenced a court action further evidenced bad faith. Her bad faith argument is premised on R.C. 2744.03(A)(6) which provides that "an employee" is immune from liability unless "[t]he employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner[.]" In addition to Camargo's failure to raise this exception to immunity in the trial court, R.C. 2744.02(A)(6) "'applies only to individual employees and not to political subdivisions.'" *Minaya v. NVR, Inc.*, 2017-Ohio-9019, 103 N.E.3d 160, ¶ 24 (8th Dist.) quoting *Fabrey v. McDonald Village Police Dept.*, 70 Ohio St.3d 351, 356, 639 N.E.2d 31 (1994); *Sudnik v. Crimi*, 117 Ohio App.3d 394, 398,

11.

690 N.E.2d 925 (8th Dist.1996). *See David v. Matter*, 2017-Ohio-7351, 96 N.E.3d 1012, ¶ 12 (6th Dist.). R.C. 2744.03(A)(6), therefore, does not apply to the city.

{¶ 22} Because the city was immune from liability under R.C. 2744.02(A)(1) and none of the exceptions to immunity under R.C. 2744.02(B) apply, and because no individual city employees were named in the complaint, there is no genuine issue of material fact as to the city's immunity and as a matter of law the city is entitled to judgment. Therefore, the trial court did not err in granting the city's motion for summary judgment. Camargo's assignment of error is not well-taken.

## IV. Conclusion

{¶ 23} On consideration whereof, the February 13, 2023 judgment of the Lucas County Court of Common Pleas is affirmed. Pursuant to App.R. 24, Camargo is ordered to pay the costs of this appeal.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Myron C. Duhart, J.                             _____
                                                   JUDGE

Charles E. Sulek, P.J.
CONCUR.                                  _____
                                                   JUDGE



Christine E. Mayle, J.
CONCURS AND WRITES                 _____
SEPARATELY.                                    JUDGE

12.

**MAYLE, J.**

{¶ 24} I concur in the majority's decision to affirm summary judgment for Toledo, and I agree that Camargo's "bad faith" argument must be rejected because the immunity exception of R.C. 2744.03(A)(6) applies to individual *employees*, not political subdivisions like Toledo. I write separately because the majority does not fully address Camargo's main argument—i.e., Camargo argues that we should follow *Ledbetter v. Dayton*, 2d Dist. Montgomery No. CA 12249, 1991 WL 38871 (Mar. 22, 1991), which she claims is factually analogous, and find that Toledo is not immune from liability because, at a certain point, it ceased performing a governmental function by retaining Camargo's vehicle.

{¶ 25} In *Ledbetter*, the city of Dayton held the Ledbetters' car for over 21 months—from April 11, 1988 to January 16, 1990. Initially, the city seized their vehicle under "the authority of R.C. 4549.62 and R.C. 4549.63, which together authorize a police officer to seize and take possession of any vehicle which has a VIN plate which has been tampered with." *Id.* at *1. The Ledbetters sued the city in municipal court on July 11, 1988, seeking damages and the return of the vehicle. The municipal court issued a decision on October 19, 1988, finding that "Valerie Ledbetter was the title owner of the car as she held title to the car and the vehicle bore the same serial number as appeared on the certificate of title. For these reasons, the referee concluded that the City had no right

13.

to retain possession of the car." *Id.* The city, however, did not return the car until January 16, 1990.

{¶ 26} A few months after the return of the car, the municipal court found that the Ledbetters were entitled to damages in the amount of $9,675 as damages for loss of use ($15 per day, beginning on April 11, 1998, the date the car was first seized, and continuing until the car was returned on January 16, 1990), plus additional damages for parts that were missing from the car at the time it was returned. *Id.* at *2.

{¶ 27} On appeal, the city argued that it was statutorily immune from liability for damages because it was performing a government function when it seized and detained the Ledbetters' car—specifically, "[t]he enforcement or nonperformance of any law" under R.C. 2744.01(C)(2)(i). The appellate court agreed that the city's actions were "initially protected" by governmental immunity because the seizure and detention of the vehicle were authorized by R.C. 4549.62 and 4549.63. *Id.* at *5. However, the court went on to find that

> once the court ordered the City to return the car, and there was no stay of
> that order, further retention of the car by the City could no longer be
> considered to be for the purpose of "enforcement…of any law" as it had
> been judicially determined that the City's possession of the vehicle was not
> required for that purpose. Therefore, further detention of the car by the
> City ceased to be an "act or omission…in connection with a

14.

governmental...function" within the contemplation of R.C. 2744.02(A)(1), and ceased to be protected by the immunity afforded under R.C. 2744.02(A)(1). Governmental immunity did not, in this case, extend protection to the City's deliberate violation of the court order, even though its actions prior to the court order were protected by governmental immunity. We conclude that the governmental immunity extended under R.C. 2744.02 did not insulate the City from liability for damages which accrued after the decision and entry of October 19, 1988.

{¶ 28} Camargo argues that under *Ledbetter*, Toledo is not immune from liability because it stopped performing a statutorily-protected governmental function when it failed to return her vehicle as soon as it was "no longer * * * needed as evidence or for another lawful purpose * * *" as required by R.C. 2981.11. I disagree.

{¶ 29} Essentially, *Ledbetter* stands for the unremarkable proposition that a city's "deliberate violation of [a] court order" is not a "governmental function" under R.C. 2744.01(C). *Ledbetter* at *5. A city's deliberate violation of a court order is not analogous to its proper—but, perhaps, imperfect—performance of a governmental function under R.C. 2744.01(C). Indeed, as the majority points out, under R.C. 2744.02(B)(5), a political subdivision is immune from civil liability for "injury, death, or loss to person or property" unless "civil liability is *expressly* imposed upon the political subdivision by a section of the Revised Code * * *." (Emphasis added.) Although R.C.

15.

2981.11 imposes a duty to promptly return seized property to the lawful owner, there is no language within the statute that imposes express liability for a city's failure to do so. It would subvert the express provisions of R.C. 2744.02(B)(5)—and, indeed, the entire policy underlying governmental immunity—if we were to hold that a political subdivision somehow loses its immunity protection when it fails to perform a governmental function in full accordance with the law.

{¶ 30} For these reasons, I concur in the foregoing judgment.

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.